[Cite as *State v. Evans*, 2010-Ohio-4813.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO.  1-10-22

    v.

DAVID V. EVANS,                       O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2009 0327

**Judgment Affirmed**

Date of Decision:   October 4, 2010

APPEARANCES:

    *Destiny R. Slaughterbeck*  for Appellant

    *Jana E. Emerick*  for Appellee

Case NO. 1-10-22

**PRESTON, J.**

{¶1}   Defendant-appellant, David V. Evans (hereinafter "Evans"), appeals the judgment of conviction and sentence entered against him in the Allen County Court of Common Pleas, following a jury trial in which Evans was found guilty of assault on a corrections officer.  For the reasons that follow, we affirm.

{¶2}   On October 15, 2009, the Allen County Grand Jury returned an indictment charging Evans with one count of assault on a corrections officer in violation of R.C. 2903.13(A)&(C)(2)(a), a felony of the fifth degree.  On October 26, 2009, Evans was arraigned and entered a plea of not guilty.

{¶3}   On February 9, 2010, a jury trial commenced, and after the presentation of evidence, the jury returned a verdict finding Evans guilty of assault on a corrections officer.  The matter proceeded to sentencing and the trial court sentenced Evans to twelve months in prison, which was to be served consecutive to the prison term in which Evans was already serving.

{¶4}   Evans now appeals and raises one assignment of error.

**ASSIGNMENT OF ERROR**

**THE REMOVAL OF THE AFRICAN-AMERICAN JUROR BY PEREMPTORY CHALLENGE VIOLATED THE DUE PROCESS AND EQUAL PROTECTION RIGHTS OF THE APPELLANT, RESULTING IN THE DENIAL OF A FAIR TRIAL.**

- 2 -

{¶5} In his only assignment of error, Evans argues that, contrary to *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, a peremptory challenge was exercised by the State against a prospective juror of African-American descent, which gave rise to an inference of discrimination, and that consequently, the trial court's denial of his *Batson* motion ultimately resulted in a violation of his constitutional rights.

{¶6} In *Batson v. Kentucky*, the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." 476 U.S. at 89. The Court stated that a defendant can demonstrate a violation of his equal protection rights pursuant to the Fourteenth Amendment of the United States Constitution by showing that the State's use of peremptory challenges at the defendant's trial was used to intentionally exclude members of the defendant's race. Id. at 96. As a result, the Court established a three-step procedure for evaluating claims of racial discrimination concerning peremptory challenges: "'First, the opponent of the strike must make a prima facie showing of discrimination. Second, the proponent must give a race-neutral explanation for the challenge. Third, the trial court must determine whether, under all the circumstances, the opponent has proven purposeful racial discrimination.'" *State v. Douglas*, 3d Dist. 9-05-24, 2005-Ohio-6304, ¶29, quoting *State v. White* (1999), 85 Ohio St.3d 433, 436, 709 N.E.2d 140,

citing *Batson*, 476 U.S. at 96-98. Regarding the third step, the Supreme Court of Ohio has stated that:

> **[T]he trial court may not simply accept a proffered race-neutral reason at face value, but must examine the prosecutor's challenges in context to ensure that the reason is not merely pretextual. "[T]he rule in Batson provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it."** *Miller-El v. Dretke* **(2005), 545 U.S. 231, 251-52, 125 S.Ct. 2317, 162 L.Ed.2d 196. If the trial court determines that the proffered reason is merely pretextual and that a racial motive is in fact behind the challenge, the juror may not be excluded. Id. at 252.**

*State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶65. Additionally, on appeal, this Court will not reverse a trial court's finding that there was no purposeful racial discrimination unless it is clearly erroneous. *State v. Stribling*, 3d Dist. No. 1-08-59, 2009-Ohio-1444, ¶16, citing *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶61.

{¶7} Here, during voir dire, the State exercised the first of its four peremptory challenges to excuse prospective juror Branch, who was African-American. (Feb. 9, 2010 Tr. at 77). Immediately, the defense raised a *Batson* challenge to the State's excusal of Branch, since Evans was also African-American. (Id. at 78-79). Without addressing the issue regarding whether the defense had established a prima facie case of discrimination, the State responded by providing several racially neutral reasons for why it was peremptorily

challenging the juror.[1]  First, the State claimed that the juror had been convicted of domestic violence, or at least a lesser included charge of that offense.  (Id. at 79). In addition, the State noted that the juror had to take anger management counseling.  (Id.).  As a result, the State claimed it was concerned that the criminal charge against Evans, assault, was too similar to the domestic violence incidents discussed by the juror, especially considering that they both involved acts of physical violence.  (Id. at 79-80).  Moreover, the State also noted that the juror had indicated he had an illness and was taking medication, which he indicated could interfere with his ability to serve on the jury.  (Id. at 80).  Finally, the State pointed out that the juror himself had expressed that "he wouldn't feel right" being a member of the jury.  (Id. at 80).

{¶8}    Thereafter, the trial court addressed the issue regarding the defense's prima facie case, specifically noting the following: that Evans was African-American; that Branch was the only African-American of the twelve people initially paneled; the nature of the underlying crime; and the treatment of members of the venire with similar characteristics.  (Id. at 80-82).  After noting the above, the trial court concluded that, "[t]aking into consideration all of those things I will at least make a finding for purposes of my analysis that the defense has made out a prima facie case with respect to Mr. Branch.  He's the only African-American, it

---

[1] We note that the trial court addressed the issue of whether the defense had established a prima facie case of discrimination after the State offered its racial neutral reason for exercising its peremptory challenge.

appears, to be on the twelve that we're focusing on. So, for purposes of the Batson analysis, while it could be argued perhaps there hasn't been a prima facie case, I'm going to find that there is."[2] (Id. at 82). Furthermore, after considering all of the circumstances and the State's racially neutral reasons, the trial court ultimately determined that the State had not engaged in racial discrimination, and the challenge was overruled. (Id. at 80-83).

{¶9} On appeal, Evans argues that the record fails to establish that the explanations offered by the State were race-neutral, and therefore, the trial court's decision to overrule his motion was clearly erroneous. However, after reviewing the record, we cannot find that the trial court's decision was clearly erroneous.

{¶10} First of all, when the trial court inquired as to whether any of the potential jurors were on medication, Branch replied "yes" and informed the court that he suffered from "M.S.," which "affected [him] every now and then." (Feb. 9, 2010 Tr. at 19-20). In particular, Branch stated that his medication caused him to become "dizzy, [and have] real bad headaches," and that it sometimes affected his ability to pay attention. (Id. at 20). Moreover, when asked if he would be willing to sit on the jury, Branch replied, "[h]onestly, if I feel like this, I'm being honest, I wouldn't feel up to it." (Id.).

---

[2] Although this Court may not agree with the trial court's finding that the defense had established a prima facie case of discrimination, this author wishes to note that he is sympathetic to the trial court's dilemma. Nevertheless, neither party challenged the defense's prima facie case and because of the ultimate outcome, this Court does not find that the trial court's decision was clearly erroneous.

{¶11} Furthermore, there was additional evidence that Branch had experienced prior dealings with the court system. Specifically, Branch indicated that, even though at least one of the charges had been reduced to a disorderly conduct, he had been involved "more than once" with charges stemming from domestic violence incidents. (Id. at 41). Branch went on to explain that he believed that there had been false accusations against him, but that it had been too late to drop the charges against him, so as a result, he was placed on probation and had to go to anger management counseling, which he had just recently completed. (Id. at 43-46). We acknowledge that despite his dealings with the court system in the past, the juror told defense counsel that he would be able to keep an open mind, listen carefully to the evidence, and follow the judge's instructions. (Id. at 54-55). Nevertheless, when defense counsel asked if he would have any difficulty being "fair and impartial," Branch replied, as follows, "[t]o be very honest, anything that deals with stuff like this, considering the fact that I've been involved with Court cases and stuff, I wouldn't feel right to say, you know, if somebody was going down or something. I wouldn't feel right being a part of it." (Id. at 55).

{¶12} Based on the above evidence, this Court cannot find that the trial court's decision was clearly erroneous. First of all, there were indications that the prospective juror could have physical problems with sitting on the jury. In particular, Branch said that he was on medication which could sometimes affect

his ability to pay attention and cause him to become dizzy and have headaches. Moreover, there were indications that the prospective juror had been recently involved with criminal charges in which physical violence had been an issue. Specifically, Branch acknowledged that he had just been on probation and completed anger management counseling because of allegations of domestic violence. Furthermore, Branch himself expressed his unwillingness to be a part of a jury. Not only did Branch indicate that he "wouldn't feel up to" being on a jury considering his medical condition and medication, but he also acknowledged that given his recent involvement with the court system he "wouldn't feel right being a part of it." Therefore, we believe that the trial court's decision to overrule the *Batson* challenge was not clearly erroneous since there was no evidence of purposeful racial discrimination.

{¶13} Evans' assignment of error is, therefore, overruled.

{¶14} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ROGERS, J., concur.**

**/jlr**